No. 2,531.

*Ex parte* JOHN STRATMAN UPON HABEAS CORPUS.

MUNICIPAL CRIMINAL COURT OF SAN FRANCISCO.—CONSTITUTIONAL CONSTRUC-
TION.—The Municipal Criminal Court of the City and County of San Francisco
is an inferior Court within the intent of Section 1, Article VI, of the Constitu-
tion, as amended in 1862.

IDEM.—EFFECT OF AMENDMENT OF 1862.—The effect of the amendment of 1862
was to limit the power conferred on the Legislature by Article VI of the Con-
stitution to the establishment of municipal and inferior Courts within the limits
of an incorporated city.

IDEM—ORDER TRANSFERRING CASES TO, BEFORE ORGANIZATION.—An order of the
County Court of the City and County of San Francisco transferring certain
criminal cases pending in said Court to the Municipal Criminal Court of said
city and county, prior to the qualification of the Judge of the last mentioned
Court, was valid, and the Municipal Court, when organized, had authority to
try and dispose of such cases.

*A. P. Dudley, Geo. W. Tyler* and *A. Campbell,* for the writ.

*T. W. Freelon,* against it.

WALLACE, J., delivered the following opinion, RHODES,
C. J., and TEMPLE, J., concurring:

The petitioner, John Stratman, is imprisoned in the com-
mon jail of the City and County of San Francisco, pursuant
to a final judgment rendered against him on August 15th
last, in the Municipal Court of said city and county, direct-
ing him to be imprisoned for the period of six months as a
punishment for the crime of libel.

He prosecutes this writ of *habeas corpus* to be relieved of
the imprisonment, and alleges that his detention is illegal
upon two several principal grounds.

One of these concerns the constitutionality of the Act of
the Legislature passed at its last session, to establish the
Municipal Criminal Court of the City and County of San
Francisco. It is argued in his behalf, that this Court is not
an *inferior* Court within the intent of Section 1, Article VI,
of the Constitution, as amended in 1862, by the terms of
which section the Legislature is authorized to establish
*Recorders' and other inferior Courts in any incorporated city or
town.*

If the question here made could be regarded as *res integra* in this State, it might be difficult to maintain that the Municipal Court, as established by the Act in question, is indeed a Court of inferior jurisdiction, at least within the common law definition. But I think that the authority of the Legislature to establish the Municipal Court is not, in view of the provisions of the Constitution, as existing anterior to 1862, and their interpretation by the Supreme Court of the State, open to question now.

The Constitution, *prior to the amendment of* 1862, provided in terms that *"the Legislature may also establish such municipal and other inferior Courts as may be deemed necessary."* The only substantial change appearing to have been effected by that amendment in this respect seems to be that the inferior Court, to be established thereunder, must be an inferior Court established in an *incorporated city or town*, whereas before that amendment the Legislature had power to establish such Courts without as well as within the limits of any such city or town. Indeed, it was understood to be conceded on the argument that the authority of the Legislature to establish the Municipal Court in the incorporated City of San Francisco, under the amendment of 1862, is not substantially different from its power to have established such a Court under the clauses of the Constitution of 1850. On the 5th day of April, 1850, under the old Constitution, the Legislature did establish a Municipal Court in the City of San Francisco, to be called the Superior Court of the City of San Francisco. (Acts of 1850, p. 159.) By Section 6 of that Act it was provided that the Court so established should be a Court of Record and have a seal, and should have the same power as the District Courts to regulate its forms of process and proceedings, and to make rules for its own government; and by Section 4 it was enacted that the Superior Court so established should have the same original jurisdiction within the limits of the City of San Francisco, in civil cases, as is or may be conferred upon the District Courts.

In *The People* v. *Gillespie* (1 Cal. 343), the Supreme Court declared the Superior Court of the City of San Francisco, as thus established, to be an "inferior Court," within the

meaning of the Constitution. The same view as to the inferior character of the Court was subsequently announced by Mr. Justice Heydenfelt, and with the concurrence of his associates, in *Meyer* v. *Kalkmann* (6 Cal. 589) and they there held that, because the Superior Court was inferior in the sense contemplated by the Constitution, its process should necessarily be confined to the municipal territory for which it had been created. In *Hickman* v. *O'Neal* (10 Cal. 295), a case which arose after the Superior Court had ceased to exist, Baldwin, J., declared that while the question of the constitutionality of the Act organizing that Court had been put to rest on the doctrine of *stare decisis,* its constitutionality might have been maintained upon the broader ground of principle and authority, and Mr. Justice Field concurred in that view

That the late Superior Court was constitutionally established, had been thus uniformly maintained by the Supreme Court prior to the adoption of the Constitutional Amendment of 1862; and if it had been intended to escape the judicial construction theretofore placed upon the Constitution in that respect, the amendment of 1862 afforded a convenient opportunity to limit the authority of the Legislature thenceforth in the establishment of inferior Courts; but, as we have seen, this power of the Legislature, when exercised *within the limits of an incorporated city,* was left by that amendment precisely as it had been authoritatively declared to have existed under the Constitution of 1850. I am of opinion, therefore, that at the time of the trial of the prisoner and the rendition of the judgment against him in the Municipal Court of the City and County of San Francisco, that Court had a constitutional existence.

The next point urged in behalf of the petitioner arises upon the supposed legal effect of certain facts stipulated between his counsel and the counsel for the people on the argument.

These facts are substantially as follows: On June 15th, 1870, Judge Delos Lake was County Judge of the City and County of San Francisco, in which Court the indictment against Stratman was then pending. The Judge then had

in his possession a commission from his Excellency the Governor, appointing him to be the Judge of the Municipal Criminal Court, then recently created under the Act of the Legislature referred to. In the forenoon of that day, he, as County Judge, and holding at the time the County Court, caused an order to be entered upon the record of that Court, directing that the case of Stratman (and some two hundred other criminal cases similarly situated) be transferred to the Municipal Criminal Court for trial and determination, pursuant to Section 14 of the Act establishing the latter Court, and immediately thereafter the County Court was regularly adjourned. Subsequently, and on the same day, the Judge resigned the office of County Judge, and, accepting his commission as Judge of the Municipal Court, immediately qualified as such. The Municipal Court did not, in fact, convene for the actual transaction of business until July 4th, 1870, on which day it met, and, after some proceedings, adjourned to a subsequent day, and has since been regularly engaged in the performance of the duties assigned to it by law. The case of Stratman was transmitted to it—that is, the indictment, etc., was actually filed among the records about the 15th of July, and the case itself was tried and determined in the month of August last, without objection upon the part of Stratman, so far as appears, against the regularity or sufficiency of the proceedings by which the transfer of the case was effected.

It is now urged, however, upon behalf of Stratman, that the order of the County Court of June 15th, transferring his case to the Municipal Court, was null and void, because, as it is said, at the time the order was made there was no existing Municipal Court—that no such Court had been, in fact, organized at that time—there being, indeed, at the moment of the making of the order, no person actually filling the office of Judge of the Municipal Court.

It is conceded that on June 15th, the Act establishing the Municipal Court had itself gone into effect as a statute, and that, irrespective of the non-organization of that Court, the case of Stratman was one which the County Court might

have transmitted under the provisions of Section 14 of the Act.

It is argued that the non-existence, or at least the disorganized condition, of the Municipal Court at the time of the entry of the order of transfer in the County Court, defeated that order; that the subsequent organization of the Municipal Court, even if considered to have occurred on the same day, on which the order was made, by the qualification of Judge Lake under his new commission as Judge, would not support the order previously made, for that the order must operate, if at all, *eo instanti* to transfer the cause; that its effect, if it have effect at all, is to vest the Court *ad quem* with the immediate and exclusive jurisdiction of the cause; and that, unless the latter Court was capable of receiving this instant investiture of jurisdiction at the time of the making of the order of transmission, the order itself became, for that reason, necessarily abortive. The result claimed to follow is, that, in point of law, the case of Stratman never reached the Municipal Court at all, but is yet legally pending in the County Court itself.

I proceed, therefore, to the inquiry as to existence and organization of the Municipal Court on June 15th, when the order was made in the County Court.

An examination of the Act of March 31st, will show that it, in terms, *establishes* the Court—the Municipal Court *shall be and is hereby established*, is its language.

It would be unprofitable to embark upon an inquiry into the distinction which is claimed to exist between a Court *established*, in the language of the statute, and a Court "organized," in the view of counsel. I am satisfied that these expressions, occurring in the connection in which they both do in the statute, were used as substantially synonymous, and that, in the view of the law-makers, when the Court should be *established* it would be thereby *organized*, at least so far as to enable it to become the passive recipient of such causes as the County Court was directed by the statute to transmit to it. It was *established*, and it became, by the direct expression of the statute, an entity in the considera-

tion of the law, whose creature it was—an incorporeal entity, distinct, in legal contemplation, from the mere persons of the officers through whom its business is conducted, and who are, therefore, said, in a certain sense, to *constitute the Court*. The existence of a Court does not depend upon the vacancy or incumbency of the officers through which it is accustomed to act. If the offices of Judge, Clerk and Sheriff, all the offices connected with a Court, should become vacant, and the Court thereby even become unable for the time to discharge its functions, it would not, merely for that reason, become itself disestablished or displaced from its position in the judicial system, for the Court continues, by force of the law which created it, and is not destroyed by the non-incumbency of the offices, which are themselves merely the subordinate incidents of its own existence

That the Municipal Court, then, became a judicial tribunal before and irrespective of the fact of the appointment of a Judge to preside over its sittings, is as clear as that it would not now cease to be such a tribunal should the Judge of that Court resign his office.

The other points made are not such as can be considered upon this application.

It is ordered that the writ be discharged, and that John Stratman be remanded to the custody of the Sheriff of the City and County of San Francisco, to be held by him pursuant to the judgment of the Municipal Criminal Court of said city and county, and the Clerk of the Supreme Court is directed to transmit to said Sheriff a certified copy of this order.